UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - -x

UNITED STATES OF AMERICA           :     SEALED
                                         SUPERSEDING INDICTMENT
                                   :
        -v.-                             S2 05 Cr. 1262
                                   :
LEONIDAS MOLINA-TRIANA,
     a/k/a "Sofoco,"               :
     a/k/a "Don Oscar,"
JUAN CARLOS CARDONA,               :
     a/k/a "El Flaco,"
     a/k/a "Gamin,"                :
JAIME ENRIQUE ROMERO-PADILLA,
     a/k/a "Yimmy,"                :
JORGE PLAZAS-SILVA,
     a/k/a "El Flaco,"             :
HUMBERTO AVILA,
HENRY FERRO-VARON,                 :
     a/k/a "El Mono," and
MARIA CHRISTINA MARIN-CASTRO,      :

            Defendants.            :

- - - - - - - - - - - - - - - - - -x

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: MAR 2 1 2006

COUNT ONE

(Conspiracy to Violate Narcotics Laws)

        The Grand Jury charges:

                        Background

        1.  The vast majority of cocaine brought into the United States is transported by large, sophisticated trafficking organizations that are based in the country of Colombia.  One of the largest such organizations is the Norte Valle Cartel, a criminal enterprise operating primarily in and around the city of Cali, Colombia.  The Norte Valle Cartel is responsible for

importing tens of thousands of kilograms of cocaine per year into the United States.

2.  The Norte Valle Cartel utilizes numerous methods to import their illicit product into the United States.  One significant method is to first ship the narcotics into Mexico, where the drugs are then smuggled over the United States/Mexico border.  In this method, the drugs can be transported by sea, over land through Central America, or through the air on commercial or private aircraft.

3.  El Dorado International Airport ("El Dorado") is located in Bogota, Colombia.  Security and anti-narcotics efforts at El Dorado are the responsibility of the airlines operating from that airport and Colombian law enforcement officials, including units of the Colombian National Police.

4.  Aerovias Nacionales De Colombia S.A. Avianca ("Avianca") is a Colombian-based commercial airline that operates from, among other places, El Dorado airport.  Avianca operates flights to the United States and many other countries, including Mexico.  In particular, Avianca operates a daily flight to Mexico City, Mexico.

5.  To smuggle its drugs, the Norte Valle Cartel utilizes corrupt members of Colombian law enforcement, active and retired, and corrupt employees of Avianca Airlines.  In or about the middle of October 2005, the Norte Valle Cartel used these

corrupt officials and Avianca employees to smuggle approximately 409 kilograms of cocaine, worth more than $10 million and destined for the United States, into the Avianca cargo facility at El Dorado. On October 17, 2005, the 409 kilograms were transported aboard an Avianca flight to Mexico City, Mexico, where they were seized by Mexican law enforcement personnel. A picture of the 409 kilograms of cocaine is attached hereto.

<u>Means and Methods of the Conspiracy</u>

6. Among the means and methods by which LEONIDAS MOLINA-TRIANA, a/k/a "Sofoco," a/k/a "Don Oscar," JUAN CARLOS CARDONA, a/k/a "El Flaco," a/k/a "Gamin," JAIME ENRIQUE ROMERO-PADILLA, a/k/a "Yimmy," JORGE PLAZAS-SILVA, a/k/a "El Flaco," HUMBERTO AVILA, HENRY FERRO-VARON, a/k/a "El Mono," and MARIA CHRISTINA MARIN-CASTRO, the defendants, and their co-conspirators would and did carry out the conspiracy were the following:

a. Representatives of the Norte Valle Cartel, including former Colombian police officials, recruited (a) active members of the Colombian police responsible for security operations at Avianca's cargo facility at El Dorado airport, and (b) Avianca employees at that facility, to facilitate the smuggling of cocaine into Mexico for importation into the United States.

b. Between on or about October 14 and 17, 2005, the corrupt Colombian police officials and Avianca employees

permitted 25 boxes, 10 of which contained the 409 kilograms of cocaine, to pass through security at the Avianca cargo facility at El Dorado without detection through the use of false documentation.

   c. The corrupt Colombian police officials and Avianca employees secured the narcotics for three days until, on October 17, 2005, they facilitated the loading of the narcotics onto an Avianca plane destined for Mexico City, Mexico.

   7. The role of each defendant in the conspiracy was as follows:

   a. LEONIDAS MOLINA-TRIANA, a/k/a "Sofoco," a/k/a "Don Oscar," the defendant, held the rank of Major in the Colombian National Police until approximately July 2005; MOLINA-TRIANA organized the shipment of cocaine on behalf of the Norte Valle Cartel and managed others involved in the conspiracy, including retired and active Colombian police officials.

   b. JUAN CARLOS CARDONA, a/k/a "El Flaco," a/k/a "Gamin," the defendant, held the rank of Captain in the Colombian National Police until approximately 2003; JAIME ENRIQUE ROMERO-PADILLA, a/k/a "Yimmy," the defendant, was a Lieutenant in the Colombian National Police until approximately 1995; CARDONA and ROMERO-PADILLA recruited active members of the Colombian National Police to facilitate the smuggling of cocaine through El Dorado.

   c. JORGE PLAZAS-SILVA, a/k/a "El Flaco," the defendant, and HUMBERTO AVILA, the defendant, are active patrolmen with the Colombian National Police; at relevant times during the course of this conspiracy, they were stationed at El Dorado Airport; PLAZAS-SILVA and AVILA helped pass the cocaine through security and guarded the drugs while they were at the Avianca cargo facility until its departure to Mexico City.

   d. HENRY FERRO-VARON, a/k/a "El Mono," the defendant, worked directly for MOLINA-TRIANA and was primarily responsible for maintaining contact with the active-duty Colombian National Police officials involved in the operation.

   e. MARIA CHRISTINA MARIN-CASTRO, the defendant, is an employee of Avianca who works in Avianca's cargo-handling facility; MARIN-CASTRO facilitated moving the cocaine through the Avianca cargo facility without detection and processed the paperwork allowing the shipment to travel to Mexico City.

STATUTORY ALLEGATION

   8. From at least in or about August 2005, up to and including December 2005, LEONIDAS LEONIDAS MOLINA-TRIANA, a/k/a "Sofoco," a/k/a "Don Oscar," JUAN CARLOS CARDONA, a/k/a "El Flaco," a/k/a "Gamin," JAIME ENRIQUE ROMERO-PADILLA, a/k/a "Yimmy," JORGE PLAZAS-SILVA, a/k/a "El Flaco," HUMBERTO AVILA, HENRY FERRO-VARON, a/k/a "El Mono," and MARIA CHRISTINA MARIN-CASTRO, the defendants, and others known and unknown, unlawfully,

intentionally, and knowingly did combine, conspire, confederate, and agree together and with each other to violate the narcotics laws of the United States.

9. It was a part and an object of the conspiracy that LEONIDAS LEONIDAS MOLINA-TRIANA, a/k/a "Sofoco," a/k/a "Don Oscar," JUAN CARLOS CARDONA, a/k/a "El Flaco," a/k/a "Gamin," JAIME ENRIQUE ROMERO-PADILLA, a/k/a "Yimmy," JORGE PLAZAS-SILVA, a/k/a "El Flaco," HUMBERTO AVILA, HENRY FERRO-VARON, a/k/a "El Mono," and MARIA CHRISTINA MARIN-CASTRO, the defendants, and others known and unknown, would and did manufacture and distribute a controlled substance, to wit, five kilograms and more of mixtures and substances containing a detectable amount of cocaine, intending and knowing that such controlled substance would be unlawfully imported into the United States and into waters within a distance of 12 miles of the coast of the United States, in violation of Sections 812, 959, 960(a)(3) and 960(b)(1)(A) of Title 21 of the United States Code.

Overt Acts

10. In furtherance of the conspiracy, and to effect the illegal object thereof, the following acts, among others, were committed:

a. On or about September 3, 2005, JUAN CARLOS CARDONA, a/k/a "El Flaco," a/k/a "Gamin," the defendant, and JAIME ENRIQUE ROMERO-PADILLA, a/k/a "Yimmy," the defendant, had a

meeting with a cooperating witness ("CW") during which they gave the CW one million Colombian pesos as a bribe to secure the shipment of cocaine.

   b. On or about September 7, 2005, LEONIDAS MOLINA-TRIANA, a/k/a "Sofoco," a/k/a "Don Oscar," the defendant, spoke on the telephone in Colombia with a co-conspirator not named as a defendant herein ("CC-1"), and discussed the collection of narcotics profits to be used as bribe payments for other co-conspirators.

   c. On or about September 9, 2005, MARIA CHRISTINA MARIN-CASTRO, the defendant, spoke over the telephone in Colombia with a co-conspirator not named as a defendant herein ("CC-2"), during which they discussed a bribe payment for MARIN-CASTRO's services at the airport.

   d. On or about October 14, 2004, MARIA CHRISTINA MARIN-CASTRO, the defendant, signed Avianca forms acknowledging receipt of 25 boxes of cargo, 10 of which contained 409 kilograms of cocaine.

   e. On or about October 14, 2005, JORGE PLAZAS-SILVA, a/k/a "El Flaco," the defendant, and HUMBERTO AVILA, the defendant, guarded 409 kilograms of cocaine that were stored in an Avianca cargo facility at El Dorado.

   f. On or about October 17, 2005, LEONIDAS MOLINA-TRIANA, a/k/a "Sofoco," a/k/a "Don Oscar," the defendant, and

HENRY FERRO-VARON, a/k/a "El Mono," the defendant, had a telephone conversation in Colombia during which they discussed details of the shipment of the 409 kilograms of cocaine.

g. On or about October 17, 2005, LEONIDAS MOLINA-TRIANA, a/k/a "Sofoco," a/k/a "Don Oscar," the defendant, had a telephone conversation in Colombia with a co-conspirator not named as a defendant herein ("CC-3"), during which they discussed an e-mail that CC-3 sent to co-conspirators in Mexico about the 409 kilogram-load of cocaine.

h. On or about October 17, 2005, JAIME ENRIQUE ROMERO-PADILLA, a/k/a "Yimmy," the defendant, had a telephone conversation with LEONIDAS MOLINA-TRIANA, a/k/a "Sofoco," a/k/a "Don Oscar," the defendant, during which they discussed the seizure of the load of cocaine in Mexico earlier that day.

(Title 21, United States Code, Section 963.)

COUNT TWO

(Narcotics Distribution)

The Grand Jury further charges:

11. On or about October 17, 2005, LEONIDAS LEONIDAS MOLINA-TRIANA, a/k/a "Sofoco," a/k/a "Don Oscar," JUAN CARLOS CARDONA, a/k/a "El Flaco," a/k/a "Gamin," JAIME ENRIQUE ROMERO-PADILLA, a/k/a "Yimmy," JORGE PLAZAS-SILVA, a/k/a "El Flaco," HUMBERTO AVILA, HENRY FERRO-VARON, a/k/a "El Mono," and MARIA

CHRISTINA MARIN-CASTRO, the defendants, and others known and unknown, unlawfully, wilfully, and knowingly would and did manufacture and distribute a controlled substance, to wit, five kilograms and more of mixtures and substances containing a detectable amount of cocaine, intending and knowing that such controlled substance would be unlawfully imported into the United States and into waters within a distance of 12 miles of the coast of the United States, to wit, the defendants caused approximately 409 kilograms of cocaine to be transported from Colombia to Mexico City, Mexico, with knowledge that such cocaine would be further imported into the United States.

(Title 21, United States Code, Section 959.)


FORFEITURE ALLEGATION

12.  As a result of committing one or more of the controlled substances offenses alleged in Counts One and Two of this Indictment, LEONIDAS LEONIDAS MOLINA-TRIANA, a/k/a "Sofoco," a/k/a "Don Oscar," JUAN CARLOS CARDONA, a/k/a "El Flaco," a/k/a "Gamin," JAIME ENRIQUE ROMERO-PADILLA, a/k/a "Yimmy," JORGE PLAZAS-SILVA, a/k/a "El Flaco," HUMBERTO AVILA, HENRY FERRO-VARON, a/k/a "El Mono," and MARIA CHRISTINA MARIN-CASTRO, the defendants, shall forfeit to the United States, pursuant to 21 U.S.C. § 853, any and all property constituting or derived from any proceeds the said defendants obtained directly or indirectly

as a result of the said violations and any and all property used or intended to be used in any manner or part to commit and to facilitate the commission of the violations alleged in this Indictment, including but not limited to a sum of money equal to at least $10 million in United States currency, representing the amount of proceeds obtained as a result of the offenses, for which the defendants are jointly and severally liable.

<u>Substitute Asset Provision</u>

13. If any of the above-described property, as the result of any act or omission of the defendants:

(a) cannot be located upon the exercise of due diligence;

(b) has been transferred or sold to, or disposed with, a third person;

(c) has been placed beyond the jurisdiction of the Court;

(d) has been substantially diminished in value; or

(e) has been commingled with other property that cannot be subdivided without difficulty,

it is the intent of the United States, pursuant to 21 U.S.C. § 853(p), to seek forfeiture of any other property of said defendants up to the value of the above forfeitable property.

(Title 21, United States Code, Sections 841(a)(1) and 853.)

FOREPERSON      3/21/06      MICHAEL J. GARCIA
                             United States Attorney

Form No. USA-33s-274 (Ed. 9-25-58)

---

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

---

UNITED STATES OF AMERICA

- v. -

LEONIDAS MOLINA-TRIANA,
JUAN CARLOS CARDONA,
JAIME ENRIQUE ROMERO-PADILLA,
JORGE PLAZAS-SILVA,
HUMBERTO AVILA,
HENRY FERRO-VARON, and
MARIA CHRISTINA MARIN-CASTRO,

Defendants.

---

### SUPERSEDING INDICTMENT

S2 05 Cr. 1262

(21 U.S.C. §§ 959, 963.)

MICHAEL J. GARCIA
United States Attorney.

A TRUE BILL

3/21/06

Foreperson.