

**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

---

*The Silvio J. Mollo Building*

*One Saint Andrew's Plaza*
*New York, New York 10007*

January 30, 2008

By ECF and Hand Delivery

The Honorable Denise Cote
United States District Court
Southern District of New York
500 Pearl Street
New York, New York 10007

      Re:   United States v. Jaime Enrique Romero-Padilla
              S3 05 Cr. 1262 (DLC)

Dear Judge Cote:

      Pursuant to Rule 404(b) of the Federal Rules of Evidence, the Government respectfully submits this letter to notify the Court and the defendant of certain evidence that the Government may seek to introduce at trial of other crimes, wrongs, or acts committed by the defendant. As discussed below, the Government submits that this evidence is admissible as direct evidence of the charges in the Superseding Indictment. In addition, or alternatively, the other evidence discussed herein is also admissible pursuant to Rule 404(b) as proof of the defendant's intent and knowledge with respect to the charged conduct, the only issue that is likely to be contested at trial.

      The Government apologizes for the fact that this motion is being made the week before the trial of this matter. The Government, however, just learned of this evidence on Monday, January 28, 2008, and did not obtain the details about such conduct sufficient to make this motion until earlier today.

## Background

### A. The Government's Case-In-Chief

      The Government anticipates that the evidence at trial will establish (a) that from in or about August 2005 up to and including in or about April 2006, the defendant conspired with others to distribute five kilograms and more of cocaine knowing

The Honorable Denise Cote
January 30, 2008
Page 2

or intending that the cocaine would be illegally imported into the United States, and (b) that the defendant participated in a distribution in Colombia of five kilograms and more of cocaine knowing or intending that such cocaine would be illegally imported into the United States.  The alleged conduct led to the seizure of approximately 409 kilograms of cocaine in Mexico City in October 2005 and the seizure of a total of approximately 1700 kilograms from two locations in Bogota, Colombia, in April 2006.  The evidence will demonstrate that both of the seizures of cocaine were destined for the United States.

In addition to evidence relating to these substantial seizures, the Government anticipates that the evidence will consist of:  Colombian wiretap recordings (including calls involving the defendant); surveillance video (including of the defendant); the testimony of undercover police officers who dealt with the defendant; cooperator testimony; and physical evidence seized from the defendant's automobile upon his arrest.  In light of the overwhelming evidence of the defendant's complicity in the conduct at issue, the Government expects that the defendant will not seriously contest that he participated in the alleged conduct but that he will rather defend on the ground that he did not know or intend that the cocaine was destined for importation into the United States.

    **B.**    **The Proffered Other Conduct Evidence**

In addition to other evidence demonstrating the defendant's knowledge that the seized cocaine was indeed destined for the United States, at trial the Government will seek to admit testimony about two potential narcotics transactions that the defendant discussed with Henry Ferro-Varon, a Government cooperator who was, in substance, the defendant's partner during the charged conduct.  The two discussions, both of which occurred during the course of the charged conspiracy, in substance can be summarized as follows:

- In or about early 2006, the defendant introduced Ferro-Varon to another individual nicknamed "Gordo" at a mall in Bogota, Colombia.  At that meeting, the three discussed the possibility of starting a business, separate from their activities with the other defendants charged in this case, in which "ice" -- i.e., methamphetamine -- would be produced and shipped to the United States via Mexico.  During this discussion, among other things the three expressly discussed that the "ice" would be imported into the

The Honorable Denise Cote
January 30, 2008
Page 3

> United States from Mexico in order to take advantage of the demand for the drug in the United States. Ferro-Varon would be charged with obtaining the precursor chemicals and provide them to "Gordo," who would be in charge of the laboratory to produce the "ice." This arrangement was never consummated due to the arrests of the defendant and Ferro-Varon in April 2006.

- Shortly after the meeting with respect to the potential "ice" business, the defendant had a series of discussions with Ferro-Varon with respect to the possibility of beginning a business, separate from their activities with the other defendants charged in this case, that would have entailed the shipment of heroin from Colombia to the United States via the Dominican Republic. The heroin would have been transported by couriers who would swallow heroin-filled capsules. The defendant and Ferro-Varon specifically discussed, among other things, per-kilogram prices for heroin both in the United States and in the Dominican Republic. The defendant and Ferro-Varon also discussed starting this heroin business by using whatever profits they made from the large shipment of cocaine from Buenaventura in April 2006 (part of the instant case). As with the plan to traffic in "ice," this proposed drug business idea was never consummated as the result of the arrests of the defendant and Ferro-Varon in April 2006.

## Argument

### A. The proffered evidence is direct evidence relating to the charged conspiracy.

The proffered discussions can fairly be viewed as direct evidence of the charged offenses in several ways. First, the discussions constitute direct evidence that the defendant was aware that narcotics are shipped to the United States via third countries generally and through Mexico specifically. Indeed, the discussions surrounding the proposed transactions constitute an express acknowledgment by the defendant, during the course of the charged conspiracy, that transhipment through Mexico is a method of shipping narcotics to the United States. The fact that this admission happened to occur in the context of discussing other bad acts does not, in the Government's view, take the admission out of the category of directly admissible evidence.

The Honorable Denise Cote
January 30, 2008
Page 4

Second, the fact that the defendant was involved in the Buenaventura shipment that is charged in this case is supported by the fact that he was taking preparatory steps to use the anticipated profits from that shipment.

Third, the proffered discussions are admissible as direct evidence of background to the crimes charged. The Second Circuit has repeatedly held that prior act evidence is admissible to: (1) explain the development of the illegal relationship between participants in a conspiracy; (2) explain the mutual trust that existed between conspirators; or (3) complete the story of the crimes charged. See United States v. Rosa, 11 F.3d 315, 333-34 (2d Cir. 1993) (evidence of prior acts of car theft and drug dealing properly admitted to show development of illegal relationship between defendant and co-conspirator and to explain how defendant came to play important role in conspiracy); United States v. Inserra, 34 F.3d 83, 89 (2d Cir. 1994) ("evidence of other bad acts may be admitted to provide the jury with the complete story of the crimes charged by demonstrating the context of certain events relevant to the charged offense."); United States v. Pitre, 960 F.2d 1112, 1119 (2d Cir. 1992) (evidence of prior narcotics transactions relevant background information for explaining to jury the relationship among alleged co-conspirators); United States v. Roldan-Zapata, 916 F.2d 795, 804 (2d Cir. 1990) (evidence of a pre-existing drug trafficking relationship between the defendant and a coconspirator admissible to aid the jury's understanding of how the transaction for which the defendant was charged came about and his role in it).

Indeed, it is well-established that "'evidence of uncharged criminal activity is not considered 'other crimes' evidence under Fed. R. Evid. 404(b) if it "arose out of the same transaction or series of transactions as the charged offense, if it [is] inextricably intertwined with the evidence regarding the charged offense, or if it is necessary to complete the story of the crime [on] trial.'" United States v. Gonzalez, 110 F.3d 936, 942 (2d. Cir. 1997) (quoting United States v. Towne, 870 F.2d 880, 886 (2d Cir. 1989)); see also United States v. Cilia, No. 05 Cr. 231, 2005 WL 1164153, *1 (S.D.N.Y. May 17, 2005) (same); United States v. Frank, 11 F. Supp. 2d 314, 316 (S.D.N.Y. 1998) (same).

In the instant case, the discussions surrounding the two proposed transactions are part and parcel of the relationship between the defendant and Ferro-Varon. The proffered conversations, both of which occurred during the course of the charged conspiracy, demonstrate the mutual trust between the two

The Honorable Denise Cote
January 30, 2008
Page 5

men and thus corroborate that the defendant would confide in Ferro-Varon with respect to matters that directly related to the defendant's activities in the charged conduct. Stated another way, the fact that they were, in essence, partners during the course of the charged conduct is informed by the fact that they had indeed discussed being partners outside that relationship.

In sum, because the proffered discussions are direct evidence of the charged conduct, they should be admitted as direct evidence and without limitation.

   B.  **The proffered discussions are admissible under Rule 404(b) because they are highly probative of the defendant's knowledge and/or intent with respect to the destination of the seized cocaine**.

Under Rule 404(b) of the Federal Rules of Evidence, the Court has the discretion to admit into evidence other crimes, wrongs, or acts committed by the defendant so long as it is relevant proof of some issue at trial other than the defendant's propensity to commit the charged crime. Rule 404(b) states:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, <u>intent</u>, preparation, plan, <u>knowledge</u>, identity, or absence of mistake or accident, provided that upon request by the accused, the prosecution in a criminal case shall provide reasonable notice in advance of trial, or during trial if the court excuses pretrial notice on good cause shown, of the general nature of any such evidence it intends to introduce at trial.

Fed. R. Evid. 404(b) (emphasis added).

---

In <u>Huddleston</u> v. <u>United States</u>, 485 U.S. 681, 686 (1988), the Supreme Court stated that "[t]he threshold inquiry a court must make before admitting similar acts evidence under Rule 404(b) is whether that evidence is probative of a material issue other than character." The Court's sentiment that "[e]xtrinsic acts evidence may be critical to the establishment of the truth as to a disputed issue, especially when that issue involves the actor's state of mind and the only means of ascertaining that mental state is by drawing inferences from conduct," <u>id</u>. at 685,

The Honorable Denise Cote
January 30, 2008
Page 6

was recently echoed by the Second Circuit in United States v. Brand, 467 F.3d 179, 196 (2d Cir. 2006).

       The Brand decision reaffirmed the Second Circuit's commitment to follow "an 'inclusionary approach' and allows evidence 'for any purpose other than to show a defendant's criminal propensity.'" Brand, 467 F.3d at 196 (quoting United States v. Garcia, 291 F.3d 127, 136 (2d Cir. 2002); see also United States v. Inserra, 34 F.3d 83, 89 (2d Cir. 1994) (emphasis added); see also United States v. Gordon, 987 F.2d 902, 908 (2d Cir. 1993) ("In considering whether to admit other-act evidence offered to show knowledge, the court must determine whether or not the evidence is relevant to that issue, and whether or not its probative value is substantially outweighed by the danger of unfair prejudice.") (internal citations omitted).[*] Specifically, the Second Circuit has "long acknowledged that 'prior act evidence is generally admissible to prove that the defendant acted with the state of mind necessary to commit the offense charged,'" Brand, 467 F.3d at 197 (quoting United States v. Zackson, 12 F.3d 1178, 1182 (2d Cir.1993), and the Government need only establish a "'similarity or some connection' to establish that a prior act is relevant to one of the elements (in this case, intent) of the crime charged." Id.

       In narcotics cases in particular, the Second Circuit has held that where a defendant raises a claim that he lacked the requisite knowledge, intent, or motive, the Government is permitted to introduce evidence of the defendant's other narcotics activity. See United States v. Arango-Correa, 851 F.2d 54, 60 (2d Cir. 1998) (evidence of defendant's general knowledge of narcotics transactions admissible where knowledge was at issue); United States v. Bruno, 873 F.2d 555, 561-62 (2d Cir. 1989) (evidence of prior narcotics activity admissible where "mere presence" defense raised); United States v. Fernandez, 829 F.2d 363, 367 (2d Cir. 1987) (per curiam) (same); United States v. Tussa, 816 F.2d 58, 68 (2d Cir. 1987) (evidence of prior narcotics-related crimes admissible where intent was at issue); United States v. Martino, 759 F.2d 998, 1004-05 (2d Cir. 1985) (evidence of eleven-year old prior narcotics conviction admissible where knowledge and intent were at issue).

       In light of this authority, the defendant's discussions with Ferro-Varon concerning potential shipments of narcotics to

---

[*] A District Court's Rule 404(b) rulings are disturbed on appeal "only for a clear abuse of discretion." United States v. Pipola, 83 F.3d 556, 566 (2d Cir. 1996).

The Honorable Denise Cote
January 30, 2008
Page 7

the United States are admissible to show the defendant's intent and/or knowledge that the cocaine in this case was destined for the United States.  The discussions surrounding both proposed transactions discussed with Ferro-Varon demonstrate the defendant's intent -- at the very same time that the charged conduct was occurring -- to send controlled substances (albeit different substances) to the United States.  Both proposed transactions also demonstrate the defendant's knowledge that narcotics are sent to the United States through third countries.  Indeed, the proposed "ice" transaction demonstrates that narcotics are sent to the United States via Mexico.  Accordingly, to the extent that the defense in this case is, as the Government anticipates, that the defendant did not intend to send the cocaine at issue to the United States, or did not know that the cocaine at issue would be imported into the United States after being shipped to Mexico, the discussions with Ferro-Varon are properly admissible under Rule 404(b) to show that intent and/or knowledge.  The proffered discussions are highly probative on such intent or knowledge and would clearly not be admitted for the improper purpose of showing propensity.

    **C.**    **The proffered discussions should not be excluded under Rule 403.**

    Finally, there is no basis to exclude the evidence under Rule 403, as the probative value of the evidence is not substantially outweighed by the danger of unfair prejudice.  Evidence is unfairly prejudicial "only when it tends to have some adverse effect upon a defendant beyond tending to prove the fact or issue that justified its admission into evidence."  United States v. Figueroa, 618 F.2d 934, 943 (2d Cir. 1980).  A "[d]efendant must show some undue prejudice, apart from the prejudice implicit in Rule 404(b) evidence."  United States v. Vargas, 702 F. Supp. 70, 72-73 (S.D.N.Y. 1988) (emphasis added).  Furthermore, the "fact that evidence may be 'damning' does not render it inadmissible."  Id. (citing United States v. Cirillo, 468 F.2d 1233, 1240 (2d Cir. 1972)).  Here, there is no danger of unfair prejudice.  All of the proffered evidence goes directly to the defendant's knowledge of or intent with respect to the ultimate destination of the cocaine involved in this conspiracy -- a requisite element of the charged offenses.

    Equally importantly, the proffered Rule 404(b) evidence is not significantly more sensational than the evidence of the charged crimes that will be presented at trial.  Here, the charged offense involved the movement of huge quantities of cocaine (approximately 2100 kilograms -- the equivalent of 210

The Honorable Denise Cote
January 30, 2008
Page 8

million dosage units of cocaine or, viewed another way, a wholesale price of more than $40 million). Neither the proffered testimony about small shipments of heroin nor the proffered testimony about the production and shipment of methamphetamine can reasonably be considered more sensational or inflammatory than the evidence of the charged crimes; indeed, they are demonstrably and dramatically smaller in scale and scope.

In any event, the District Court can carefully guard against any potential prejudice by instructing the jury about the proper and improper uses of the "other crimes" evidence. Such an instruction serves as an appropriate "final protection" against possible prejudice. See United States v. Levy, 731 F.2d 997, 1002 (2d Cir. 1984). If the proffered testimony is allowed under Rule 404(b), the Government will ask that the Court give an appropriate limiting instruction.

## Conclusion

For all of the foregoing reasons, the Government respectfully submits that the proffered evidence discussed above should be admissible at trial as direct evidence of the crimes charged in the Superseding Indictment or pursuant to Rule 404(b).

Respectfully submitted,

MICHAEL J. GARCIA
United States Attorney

By: _____/S/_____
KEVIN R. PUVALOWSKI
MARC P. BERGER
Assistant U.S. Attorneys
(212) 637-2311/2207

cc: Joyce London, Esq. (By ECF)